IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAQUAN BROWN | CRIMINAL ACTION NO. 20-260-1 |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                           **January 26, 2023**

Defendant Shaquan Brown has been charged with conspiracy to commit Hobbs Act robberies as well as substantive robbery and firearm counts. On August 26, 2020, a federal grand jury returned an indictment charging Mr. Brown with one count of possession of a firearm by a felon in violation of 18 U.S.C.§ 922(g)(1).[1] On October 7, 2021, the grand jury returned a superseding indictment charging Mr. Brown with two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), two counts of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).[2] On February 3, 2022, the grand jury returned a second superseding indictment as to Mr. Brown, as well as co-defendants Tyreek Byrd and Sahir McCorkle, charging all three with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951.[3] The charges stem from four alleged incidents: (1) the robbery of Happy Laundromat in Philadelphia, Pennsylvania on November 20, 2019; (2) the attempted robbery of

---

[1] Indictment [Doc. No. 10].

[2] Superseding Indictment [Doc. No. 71].

[3] Second Superseding Indictment [Doc. No. 82] at 3.

D.W. in Philadelphia, Pennsylvania on December 1, 2019; (3) the robbery of Fiji Nails & Spa in Havertown, Pennsylvania on December 31, 2019; and (4) the attempted robbery of A.H. in Uwchlan Township, Pennsylvania on January 3, 2020.[4]

Mr. Brown now moves to dismiss Count 10 of the Second Superseding Indictment as unconstitutional, bringing both a facial and as-applied challenge.[5] Mr. Brown also moves to sever his trial from that of his co-defendants' and to sever certain of his charges from others.[6] The Court held a hearing on Mr. Brown's motions on January 9, 2023. For the reasons stated in Court during the hearing, and as set forth below, the motions will be denied.

### I.   MOTION TO DISMISS COUNT 10 AS UNCONSTITUTIONAL

Count 10 of the Second Superseding Indictment charges Mr. Brown with violating 18 U.S.C. § 922(g), which prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."[7] During the hearing on January 9, 2023, Mr. Brown requested that the Court issue a ruling on this motion now based on current Second Amendment jurisprudence. Accordingly, the Court determines that § 922(g) does not violate the Second Amendment and is constitutional as applied to Mr. Brown, based on the current state of the law.

---

[4] *Id.* at 2-3.

[5] Def. Brown's Mot. Dismiss Count 10 [Doc. No. 169].

[6] Def. Brown's Mot. Severance [Doc. No. 170].

[7] 18 U.S.C. § 922(g).

The Second Amendment of the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed."[8] However, "the right secured by the Second Amendment is not unlimited," particularly as it intersects with criminal law.[9] In *District of Columbia v. Heller*, the Supreme Court held that the District of Columbia's ban on handgun possession in the home violated the Second Amendment, but noted that "nothing in [its] opinion should be taken to cast doubt on [the] longstanding prohibition[ ] on the possession of firearms by felons . . . ."[10] Two years later, when the Supreme Court held that the Second Amendment is enforceable against the States in *McDonald v. City of Chicago*, it reiterated that its "holding [in *Heller*] did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . . .'"[11] The Supreme Court's most recent Second Amendment decision, *New York State Rifle & Pistol Association, Inc. v. Bruen*, in which the Court struck down a state law requiring applicants for a license to carry a concealed pistol to show "proper cause," does not call into doubt *Heller* or *McDonald*.[12] Moreover, the dicta in *Bruen* stresses that the rights guaranteed by the Second Amendment are limited to "law-abiding, responsible citizens."[13]

---

[8] U.S. Const. amend. II.

[9] *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

[10] *Id.* at 626, 35.

[11] *McDonald v. City of Chicago*, 561 U.S. 742, 786 (quoting *Heller*, 554 U.S. at 626).

[12] *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022) ("We...now hold, **consistent with *Heller* and *McDonald***, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.") (emphasis added).

[13] For example, the Supreme Court noted that its decision does not call into question the constitutionality of "shall-issue" licensing regimes in 43 states. *Id.* at 2138 n.9 ("[I]t appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, '***law-abiding, responsible citizens***.'") (quoting *Heller*, 554 U.S. at 635).

Indeed, Mr. Brown concedes that "currently, the United States Supreme Court's Second Amendment jurisprudence does not extend to 18 U.S.C. § 922(g)."[14] He contends that his "challenge to 18 U.S.C. § 922(g)(1) is necessary to preserve Mr. Brown's appellate rights **should** the Supreme Court expand its current positions on the Second Amendment . . . ."[15] Therefore, until the Supreme Court directs otherwise, Mr. Brown's facial challenge to § 922(g) fails.[16]

Mr. Brown's as-applied argument fares no better. An as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right."[17] Mr. Brown argues that the statute is unconstitutional as applied to him because his previous felony convictions are for non-violent crimes. Mr. Brown's felony convictions include burglary, possession with intent to distribute, and possession of a firearm without a license.[18] Mr. Brown points to the Third Circuit's decision in *Binderup v. Attorney General*, in which the Court of Appeals held that § 922(g)(1) was unconstitutional as applied to an individual who was convicted of a state misdemeanor and another individual who unlawfully carried a handgun without a license.[19] The Third Circuit applied a two-step analysis, noting that the challenger must

---

(emphasis added). *See also id.* at 2162 ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations.") (quoting *Heller*, 554 U.S. at 636) (Kavanaugh, J., concurring).

[14] Def. Brown's Br. Supp. Mot. Dismiss Count 10 [Doc. No. 169-2] at 2.

[15] *Id.* (emphasis added).

[16] *See Folajtar v. Att'y Gen.*, 980 F.3d 897, 901 (3d Cir. 2020) ("Since *Heller*, we, along with every court to consider the issue, have rejected challenges that § 922(g)(1) on its face violates the Second Amendment.").

[17] *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*quoting United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)).

[18] Def. Brown's Br. Supp. Mot. Dismiss Count 10 [Doc. No. 169-2] at 3.

[19] *Binderup v. Att'y Gen.*, 836 F.3d 336, 356 (3d Cir. 2016), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111.

"(1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class."[20] If the challenger succeeds, at step two "the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny . . . ."[21]

The government contends that *Binderup*'s two-part analysis does not survive *Bruen*, citing the Third Circuit's decision in *Range v. Attorney General*.[22] *Range*, which has since been vacated and rehearing *en banc* granted, denied an as-applied challenge to § 922(g) where the challenger was convicted of a non-violent felony (making false statements about income to obtain food stamps). The Court of Appeals held that *Binderup*'s two-part test does not apply post-*Bruen* and that, instead, the government must show that "the regulation is consistent with this Nation's historical tradition of firearm regulation."[23] Although *Range* has not been vacated on the merits, it is no longer controlling.

Assuming for purposes of this discussion that Mr. Brown's felonies are properly considered non-violent, Mr. Brown's as-applied challenge nonetheless fails. First, *Binderup* does not directly apply to the facts of this case, as the Court of Appeals stated that its "decision is limited to the cases before us, which involve **state-law misdemeanors** bringing as-applied

---

[20] *Id.* at 347.

[21] *Id.*

[22] *Range v. Att'y Gen.*, 53 F.4th 262 (3d Cir. 2022), *reh'g en banc granted*, *vacated by* 56 F.4th 992 (3d Cir. 2023).

[23] *Id.* at 270 (quoting *Bruen*, 142 S. Ct. at 2126) (internal quotations omitted); *see also Bruen*, 142 S. Ct. at 2125-27 ("In the years since [*Heller* and *McDonald*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. Today, we decline to adopt that two-part approach …. Despite the popularity of this two-step approach, it is one step too many …. [T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

Second Amendment challenges to § 922(g)(1). This is important because when a legislature chooses to call a crime a misdemeanor, we have an indication of **non-seriousness** that is lacking when it opts instead to use the felony label."[24] Second, applying the Supreme Court's guidance in *Bruen* to the as-applied analysis,[25] the Court finds that § 922(g)(1), as applied to the facts of this case, "is consistent with this Nation's historical tradition of firearm regulation."[26] As the Court of Appeals has expressed, "*Heller* recognized 'longstanding prohibitions on the possession of firearms by felons,' **not just violent felons**" and "[t]he view that anyone who commits a serious crime loses the right to keep and bear arms dates back to our founding era."[27] The crimes leading to Mr. Brown's disarmament fall squarely within the ambit of this Nation's history of firearm regulation, and his as-applied challenge fails.

## II.    MOTION FOR SEVERANCE OF DEFENDANTS' TRIALS AND CHARGES

Mr. Brown also moves to sever his trial from that of his co-defendants and to sever Counts 1 (conspiracy) and 2, 3, 6, and 7 (relating to the alleged robberies at the Happy Laundromat and the Fiji Nails & Spa) from Counts 5, 8, 9 and 10 (relating to the alleged

---

[24] *Binderup*, 836 F.3d at 353 n.6 (emphases added).

[25] Shortly before the Third Circuit's initial decision in *Range*, another court in this Circuit denied a facial and as-applied challenge to U.S.C. § 922(g)(1) in the wake of *Bruen*. *See United States v. Young*, No. 22-054, 2022 WL 16829260, at *1 (W.D. Pa. Nov. 7, 2022). There, the parties disputed the impact of *Bruen* and whether its rejection of the two-step framework for analyzing Second Amendment challenges also pertained to as-applied challenges, and not only facial challenges. *Id.* at *11. The court declined to determine which framework applies and instead denied the defendant's as-applied challenge under both frameworks. *Id.* However, even before *Range*, the Court of Appeals recognized the abrogation of *Binderup* by *Bruen*, though it did not discuss it in depth. *See Frein v. Pennsylvania State Police*, 47 F.4th 247, 254 (3d Cir. 2022).

[26] *Bruen*, 142 S. Ct. at 2126.

[27] *Binderup*, 836 F.3d at 348-49 (emphasis added) (citation omitted); *see also Range*, 53 F.4th at 271-82 (describing the history of firearm regulation dating from the 1600s).

attempted robbery of D.W. and the alleged attempted robbery of the residence of A.H.).[28] Under Federal Rule of Criminal Procedure 8(a), offenses may be joined when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[29] Under Rule 8(b), defendants may be joined when "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."[30] Further, "[a]ll defendants need not be charged in each count."[31]

Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."[32] "The question whether to sever offenses or defendants charged in an indictment pursuant to Rule 14 rests in the sound discretion of the district court."[33] "Defendants seeking a severance bear a 'heavy burden' and must demonstrate not only that the court would abuse its discretion if it denied severance, 'but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial.'"[34]

---

[28] Mr. Brown contends that the government has presented to him that Counts 5 and 9 will be dismissed pursuant to *United States v. Taylor*, No. 20-1459 (June 21, 2022). *See* Def. Brown's Br. Supp. Mot. Severance [Doc. No. 170-2] at 5 n.1. As of the date of this Order, the government has yet to dismiss these charges.

[29] Fed. R. Crim. P. 8(a).

[30] Fed. R. Crim. P. 8(b).

[31] *Id.*

[32] Fed. R. Crim. P. 14(a).

[33] *United States v. McCode*, 317 F. App'x 207, 212 (3d Cir. 2009) (citing *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005)) (internal citation omitted).

[34] *Lore*, 430 F.3d at 205 (quoting *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005)) (alterations in original).

Mr. Brown's motion to sever will be denied at this time, as he has not demonstrated that he will suffer "clear and substantial prejudice" that will lead to a "manifestly unfair trial" if the defendants' trials and his charges are not severed.[35] Count 1 "charges that the defendant and co-defendants Byrd and McCorkle, along with others, planned and conspired to commit robberies targeting business owners and drug dealers."[36] Mr. Brown argues that it is "highly likely that [his] co-defendants will use the Government's narrative to focus the jury's attention on Mr. Brown" in order to "point the finger at him."[37] While his co-defendants' trial strategies may implicate Mr. Brown, the Court cannot conclude, at this time, that this would cause *substantial* prejudice that would lead to a "*manifestly unfair* trial."[38] Nor has Mr. Brown demonstrated that he has suffered clear and substantial prejudice due to the trial delays thus far, including delays related to joinders of defendants, superseding indictments, COVID-19, Mr. Brown's own pre-trial motions, and a co-defendant's pending competency evaluation. Based on current circumstances, the Court determines that severance is not warranted on this basis, but Mr. Brown may renew the motion if appropriate at a later time.

With respect to severance of the charges, all four of the incidents giving rise to the charges are encompassed in the Count 1 conspiracy charge, rendering severance improper.[39] Further, the Court is not persuaded by Mr. Brown's attempts to distinguish the robberies of Happy Laundromat and Fiji Nails & Spa from the attempted robberies of D.W. and A.H. as

---

[35] *Id.*

[36] United States Omnibus Resp. [Doc. No. 176] at 13.

[37] Def. Brown's Br. Supp. Mot. Severance [Doc. No. 170-2] at 4.

[38] *Lore*, 430 F.3d at 205 (emphasis added).

[39] *See* Second Superseding Indictment [Doc. No. 82] at 3.

8

requiring severance. Defendants are alleged to have used (or planned to use) similar methods during the course of each of the robberies and attempted robberies. Indeed, even Mr. Brown concedes that there are similarities between the four incidents.[40] Accordingly, the Court determines that severance of Mr. Brown's charges is not warranted.

### III.  CONCLUSION

For the reasons stated above, Mr. Brown's Motion to Dismiss Count 10 of the Second Superseding Indictment as Unconstitutional is denied, and Mr. Brown's Motion for Severance of Defendants' Trials and Charges is denied without prejudice. An order will be entered.

---

[40] Def. Brown's Br. Supp. Mot. Severance [Doc. No. 170-2] at 6 ("[T]he offenses are, at most, of the 'same or similar character' . . . .").