IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br>v.<br>SHAQUAN BROWN<br>Defendant. | CRIMINAL ACTION NO. 20-260-1 |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                                                                   October 25, 2023

      Shaquan Brown, who has been convicted of seven prior felonies, was indicted for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). The government alleges that the firearm was recovered after Mr. Brown fled from the police when the officers interrupted an attempted home invasion robbery.[1] The firearm was found in Mr. Brown's backpack, alongside duct tape and zip ties.[2] Mr. Brown moves to dismiss Count 10 of the Second Superseding Indictment, arguing that § 922(g)(1) is unconstitutional (1) as applied to him, and (2) on its face because the statute is vague and violates the original meaning of the Commerce Clause.[3] For the reasons set forth herein, the Court will deny Defendant's Motion to Dismiss Count 10 of the Second Superseding Indictment.

---

[1] Resp. in Opp. to Mot. to Dismiss [Doc. No. 212] at 28.

[2] Order [Doc. No. 73] at 9.

[3] Mot. to Dismiss [Doc. No. 208].

1

I. **BACKGROUND**

Defendant Shaquan Brown has been charged with conspiracy to commit Hobbs Act robberies as well as substantive robbery and firearm counts. On August 26, 2020, a federal grand jury returned an indictment charging Mr. Brown with one count of possession of a firearm by a felon in violation of § 922(g)(1).[4] On October 7, 2021, the grand jury returned a superseding indictment charging Mr. Brown with two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), two counts of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and one count of possession of a firearm by a felon in violation of § 922(g)(1).[5] On February 3, 2022, the grand jury returned a second superseding indictment as to Mr. Brown, as well as co-defendants Tyreek Byrd and Sahir McCorkle, charging Mr. Brown again with one count of possession of a firearm by a felon pursuant to § 922(g)(1), as well as numerous other charges.[6] The charges stem from four alleged incidents: (1) the robbery of Happy Laundromat in Philadelphia, Pennsylvania on November 20, 2019; (2) the attempted robbery of D.W. in Philadelphia, Pennsylvania on December 1, 2019; (3) the robbery of Fiji Nails & Spa in Havertown, Pennsylvania on December 31, 2019; and (4) the attempted robbery of A.H. in Uwchlan Township, Pennsylvania on January 3, 2020.[7]

On December 13, 2022, Mr. Brown moved to dismiss Count 10—possession of a firearm as a felon under § 922(g)(1)—of the Second Superseding Indictment as unconstitutional, bringing both a facial and as-applied challenge.[8] Mr. Brown also moved to sever his trial from

---

[4] Indictment [Doc. No. 10].

[5] Superseding Indictment [Doc. No. 71]

[6] Second Superseding Indictment [Doc. No. 82].

[7] *Id.* at 2–3.

[8] Mot. to Dismiss [Doc. No. 169].

his codefendants' trials.[9] After a hearing, this Court denied both motions on January 26, 2023.[10] In light of *Range v. Attorney General*,[11] a recent en banc decision by the Third Circuit, Mr. Brown filed a new motion to dismiss Count 10 as unconstitutional.[12] Mr. Brown also filed a motion to dismiss on speedy trial grounds.[13] The Court held a motions hearing on October 12, 2023. On the same date, the Court granted Mr. Brown's unopposed oral motion to sever his trial from that of his co-defendant, Tyreek Byrd, and directed the parties to meet and confer and present the Court with a joint submission regarding the Speedy Trial Act calculations.[14]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[15] When addressing an as-applied challenge to an indictment, the Court must determine whether a statute, which is constitutional in certain instances, is "nonetheless unconstitutional as applied" to the defendant's specific conduct.[16] When addressing a facial challenge, the Court must determine whether a law is unconstitutional based on its text alone.[17] This is a high bar, as it requires the challenger to establish that "no set of circumstances exists under which the Act would be valid."[18]

---

[9] Mot. to Sever [Doc. 170].

[10] Order [Doc. No 185].

[11] 69 F.4th 96 (3d Cir. 2023) (en banc).

[12] Mot. to Dismiss [Doc. No. 208].

[13] Mot. to Dismiss [Doc. 207].

[14] Order [Doc. No. 215].

[15] FED. R CRIM. P. 12(b)(1).

[16] *Spence v. Washington*, 418 U.S. 405, 414 (1974).

[17] *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 770 n. 11 (1988).

[18] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

### III. DISCUSSION

Count 10 of the Second Superseding Indictment charges Mr. Brown with violating § 922(g)(1), which prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."[19] Mr. Brown argues that § 922(g)(1) is unconstitutional as applied to him and facially unconstitutional because it is vague and violates the Commerce Clause's original meaning. The Court addresses each argument in turn.

**A. Mr. Brown's As-Applied Challenge**

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court rejected the two-step means-end scrutiny test that lower courts had been applying to Second Amendment cases.[20] Finding that the two-step approach was "one step too many," the Supreme Court held that the Second Amendment requires a text-and-history analysis.[21]

In light of *Bruen*, the Third Circuit Court of Appeals heard *Range v. Attorney General* en banc.[22] There, the Third Circuit decided that § 922(g)(1) could not constitutionally strip Range—a gun purchaser who had been convicted in 1995 of making a false statement on a food stamp application—of his Second Amendment rights because the government failed to demonstrate a

---

[19] 18 U.S.C. § 922(g).

[20] *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Under the framework rejected by the Supreme Court in *Bruen*, courts of appeals would first conduct a historical study to determine whether the challenged law burdens protected conduct under the Second Amendment. Second, courts would apply means-end scrutiny to assess the particular restriction. *See id.* at 2126–27.

[21] *Id.* at 2127.

[22] 69 F.4th 96 (3d Cir. 2023).

4

longstanding tradition of depriving people "like Range" of firearms.[23] The Third Circuit stated that the decision was a "narrow one" and unique to the nature of Range's previous conviction.[24]

In *Range*, the Third Circuit explained that under *Bruen*'s framework, courts must first determine "whether the text of the Second Amendment applies to a person and his proposed conduct" and, "if it does, the government . . . must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."[25]

> 1. *Whether the Text of the Second Amendment Applies to Mr. Brown and His Proposed Conduct*

The threshold question is whether Mr. Brown is one of "the people" who have Second Amendment rights. The Third Circuit determined that "the people" in the text of the Second Amendment refers to all people, not only law-abiding citizens.[26] Both parties agree that, under *Range*, Mr. Brown is one of "the people" protected by the Second Amendment.[27]

The next step is to determine whether the Second Amendment's plain text covers Mr. Brown's conduct. If the conduct falls under the Second Amendment, then "the Constitution presumptively protects that conduct"[28] and the government bears the burden to prove that its firearms regulation is "consistent with the Second Amendment's text and historical

---

[23] *Id.* at 106.

[24] *Id.*; *see also id.* at 110 (Ambro, J., concurring) (explaining that the *Range* majority opinion "speaks only to [Range's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like").

[25] *Id.* at 101.

[26] *Id.*

[27] The Third Circuit agreed with a statement of then-Judge Barrett that "all people have the right to keep and bear arms," though the legislature may constitutionally "strip certain groups of that right." *Id.* at 102 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)).

[28] *Range*, 69 F.4th at 103.

understanding."[29] Mr. Brown argues that possession of a firearm, which is the conduct that is prohibited under § 922(g)(1), "falls squarely within the heartland of the Second Amendment."[30] The government argues that Mr. Brown "[o]bviously" did not maintain the gun for a lawful purpose—namely self-defense—but instead possessed the gun "to facilitate the commission of a crime."[31] The Court need not determine whether the Second Amendment covers Mr. Brown's conduct because the government has met its burden to show that § 922(g)(1), as applied to Mr. Brown, is "consistent with the Nation's historical tradition of firearm regulation."[32]

> 2. *Whether 18 U.S.C. § 922(g)(1), as Applied to Mr. Brown, is Consistent with the Nation's Historical Tradition of Firearm Regulation*

The government carries the burden to demonstrate that § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[33] "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*.'"[34] The "central considerations" in deciding whether a modern regulation is "relevantly similar" to a historical analogue are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified."[35] The analogue need not be a "historical twin."[36]

---

[29] *Bruen*, 142 S. Ct. at 2131.

[30] Mot. to Dismiss [Doc. No. 208] at 5.

[31] Resp. in Opp. to Mot. to Dismiss [Doc. No. 212] at 28–29.

[32] *Bruen*, 142 S. Ct. at 2130.

[33] *Id.*

[34] *Range*, 69 F.4th at 103 (quoting *Bruen,* 142 S. Ct. at 2133).

[35] *Bruen*, 142 S. Ct. at 2132–33; *see also Range*, 69 F.4th at 103.

[36] *Bruen*, 142 S. Ct. at 2133.

Here, the government argues that "[t]here is clear historical support for restricting the possession of firearms by persons who, like the defendant, previously committed dangerous felonies."[37] The government cites to historical analogues from the 17th, 18th, and 19th centuries wherein the government restricted arms access to those who were determined to be "dangerous."[38] At the time of the ratification of the Second Amendment, firearm regulation disarmed individuals who "posed a potential danger."[39] This tradition carried on after ratification. In the mid-19th century, numerous states adopted statutes that required individuals "threatening to do harm" to "post bond before carrying weapons in public."[40] As the Supreme Court noted in *Bruen*, if individuals were "reasonably accused of intending to injure another or breach the peace," they could be subject to firearm restrictions that did not apply to others.[41]

The Third Circuit found that Range and "his individual circumstances" did not justify stripping him of his right to bear arms because the government failed to meet its burden of establishing that disarming people "like Range" fits within our Nation's history of disarming those who pose a threat to the orderly functioning of society.[42] However, the fact that "Range does not conceivably pose such a threat says nothing about those who do."[43] Mr. Brown has been convicted of seven felonies, including two first-degree felonies punishable by up to twenty years

---

[37] Resp. in Opp. to Mot. to Dismiss [Doc. No. 212] at 31.

[38] *Id.* at 31–34.

[39] *Range*, 69 F.4th 96 at 109–10 (Porter, J., concurrence).

[40] *Bruen*, 142 S. Ct. at 2148; *see also* Resp. in Opp. to Mot. to Dismiss [Doc. No. 212] at 33 (citing to Mass. Rev. Stat. ch. 134, § 16, 750 (1836); Me. Rev. Stat. ch. 169, § 16, 709 (1840); Mich. Rev. Stat. ch. 162, § 16, 162 (1846)).

[41] *Bruen*, 142 S. Ct. at 2148–49.

[42] *Range*, 69 F.4th at 105.

[43] *Id.* at 109–10, 112 (Ambro, J., concurring) ("Range committed a small-time offense. He did so with a pen to receive food stamps for his family. There is nothing that suggests he is a threat to society. He therefore stands apart from most other individuals subject to § 922(g)(1) whom we fear much like early Americans feared loyalists...").

of imprisonment.[44] In 2016, Mr. Brown was convicted of burglary of an occupied residence and conspiracy to commit burglary in the Montgomery County Court of Common Pleas.[45] In 2019, Mr. Brown pled guilty in the Philadelphia Court of Common Pleas to five felonies, including two counts of possession of narcotics with intent to deliver, two counts of violating the Pennsylvania Uniform Firearms Act, one count of conspiracy, and one count of fleeing and eluding police.[46]

Mr. Brown's criminal history is vastly differently from Range, whose conviction stemmed from him signing onto his wife's inaccurate food stamps application over 25 years ago.[47] Range's only other criminal history related to traffic tickets and fishing without a license.[48] While the government's historical analogues were insufficient to limit Mr. Range's Second Amendment rights based on his single illegal, but non-dangerous signature, there is a deep-rooted history of disarming people who may pose a danger to society. The government has met its burden of establishing numerous historical analogues to § 922(g)(1) and its application to Mr. Brown because of this Nation's history and tradition of disarming "those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society."[49]

Beyond the vast differences in Mr. Brown's and Mr. Range's criminal histories, the Supreme Court's recent Second Amendment decisions provide further assurance of the constitutionality of placing limitations on the Second Amendment. In *District of Columbia v.*

---

[44] Resp. in Opp. to Mot. to Dismiss [Doc. No. 212] at 5.

[45] *Id*.

[46] Mr. Brown had previously pled guilty to the above acts in 2016, but he then withdrew the guilty plea on August 26, 2019. He pled guilty again and is currently awaiting sentencing. *Id.* at 6.

[47] The Supreme Court has previously acknowledged the dangerousness inherent in guns and drugs. *See Smith v. United States*, 508 U.S. 223, 240 (1993) ("drugs and guns are a dangerous combination").

[48] *Range*, 69 F.4th at 98.

[49] *Id.* at 110 (Ambro, J., concurring).

*Heller*, the Court noted that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons" and such a prohibition is "presumptively lawful."[50] Two concurring opinions in *Bruen* reaffirmed the Supreme Court's statements in *Heller* that felon dispossession statutes are longstanding and lawful. In *Bruen*, Justice Alito's concurrence noted that the decision does not "disturb[ ] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns."[51] Justice Kavanaugh's concurrence also emphasized that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons"[52] Therefore, the government has met its burden of establishing that § 922(g)(1), as applied to Mr. Brown, is consistent with this Nation's historical tradition of firearm regulation.

### B.  Mr. Brown's Facial Challenge

Mr. Brown argues that § 922(g)(1) is unconstitutional on its face because the statute is unconstitutionally vague and violates the Commerce Clause. Each of these arguments is without merit.  A criminal statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or "is so standardless that it authorizes or encourages seriously discriminatory enforcement."[53] To be constitutional, "criminal statutes need only give 'fair warning' that certain conduct is prohibited."[54]

---

[50] 554 U.S. 570, 626–27 n.26 (2008).

[51] *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring).

[52] *Id.* at 2162 (Kavanaugh, J., concurring); *see also United States v. Ames*, 2023 WL 5538073 (E.D. Pa. Aug. 28, 2023) (citing to the *Bruen* concurrences when denying a defendant's motion to dismiss the indictment).

[53] *United States v. Williams*, 553 U.S. 285, 304 (2008).

[54] *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992)

According to Mr. Brown, there is no way for "ordinary people" with a past criminal conviction to have a "sure way to know" if possessing a gun will expose them to criminal punishment after *Range*.[55] However, the plain text of the statute is clear on its face. It prohibits those convicted of "crime punishable by imprisonment for a term exceeding one year" from possessing a firearm or ammunition.[56] § 922(g)(1) provides unambiguous notice to all people who fall within this category. The fact that "the Second Amendment might then constitutionally preclude punishment in certain instances should not lead us to conclude otherwise."[57] If § 922(g)(1) violates other constitutional rules, those issues are best litigated in as-applied challenges.[58] Furthermore, a court must "consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"[59] This Court has already established that the statute is constitutional as applied to Mr. Brown. "[T]he mere fact that close cases can be envisioned [does not] render[ ] a statute vague", as "[c]lose cases can be imagined under virtually any statute."[60] Therefore, the Court holds § 922(g)(1) is not unconstitutionally vague.

---

[55] *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

[56] 18 U.S.C. § 922(g)(1).

[57] *United States of America v. Kalief Ladson*, 2023 WL 6810095, at *5 (E.D. Pa. Oct. 16, 2023); *see also Ames*, 2023 WL 5538073 at *3; *United States v. Johnson*, 2023 WL 6321767, at *3 (E.D. Pa. Sept. 27, 2023); *United States v. Blackshear,* 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023); *United States v. Green*, 2023 WL 6164407, at *2 (E.D. Pa. Sept. 21, 2023).

[58] *See Ames,* 2023 WL 5538073 at *3.

[59] *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982).

[60] *U.S. v. Williams,* 553 U.S. 285, 306 (2008).

Lastly, to preserve the argument, Mr. Brown contends that § 922(g)(1) is inconsistent with the Commerce Clause's original public meaning.[61] However, as Mr. Brown acknowledges, this argument is foreclosed by precedent.[62]

### IV. CONCLUSION

For the foregoing reasons, Mr. Brown's Motion to Dismiss Count 10 of the Second Superseding Indictment is denied. An order will be entered.

---

[61] Mot. to Dismiss [Doc. No. 208] at 8.

[62] *NLRB v. Jones & Laughlin Steep Corp.*, 301 U.S. 1 (1937); *see also United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001); *United States v. Shambry*, 392 F.3d 631, 634 (3d Cir. 2004); *United States v. Gateward*, 84 F.3d 670, 672 (3d Cir. 1996); *Range*, 69 F.4th at 108.