IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br> v. <br> SHAQUAN BROWN | CRIMINAL ACTION NO. 20-260-1 |

MEMORANDUM OPINION

Rufe, J.                                                                                                November 17, 2025

On April 15, 2024, a jury found Defendant Shaquan Brown guilty of one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a)(1), and/or aiding and abetting, in violation of 18 U.S.C. § 2 (Count 6); one count of attempt to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a)(1), and/or aiding and abetting, in violation of 18 U.S.C. § 2 (Count 8); one count of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and/or aiding and abetting, in violation of 18 U.S.C. § 2 (Count 7); and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 10).[1] Defendant has filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and/or for a new trial under Federal Rule of Criminal Procedure 33.[2] For the reasons stated below, Defendant's motion will be denied.

---

[1] Jury verdict form [Doc. No. 298]. Defendant was acquitted on two counts of Hobbs Act robbery (Counts 2 and 4) and one count of carrying a firearm during and in relation to a crime of violence (Count 3). The Court dismissed Count 5 and Count 9 before trial based on a consent motion. [Doc. No. 190].

[2] Def.'s Mot. Acquittal [Doc. No. 330].

## I. LEGAL STANDARDS

### A. Motion for Judgment of Acquittal

In ruling on a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), the district court must view the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the evidence presented at trial.[3] In conducting the sufficiency inquiry, a court does "not view the government's evidence in isolation, but rather, in conjunction and as a whole," and will draw all reasonable inferences in favor of the decision of the jury.[4] "[T]he fact that alternative inferences exist is irrelevant."[5] The Court must sustain the jury's verdict if there is substantial evidence to uphold the decision.[6] Under this particularly deferential standard of review, the Court "must be ever vigilant. . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [its] judgment for that of the jury."[7] Accordingly, a finding of insufficiency should be "confined to cases where the prosecution's failure is clear."[8]

### B. Motion for a New Trial

Under Federal Rule of Criminal Procedure 33, the trial court may grant a new trial when there is a finding of trial error or when the trial court does not believe that the evidence supports the jury's verdict.[9] A motion for a new trial pursuant to Rule 33 is directed to the sound

---

[3] *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010); *United States v. Franz*, 772 F.3d 134, 154 (3d Cir. 2014).

[4] *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005).

[5] *Boria*, 592 F.3d at 486 (Fisher, J., concurring) (citing *United States v. Iafelice*, 978 F.2d 92, 97 n.3 (3d Cir. 1992)).

[6] *United States v. Trant*, 924 F.3d 83, 93 (3d Cir. 2019) (citing *United States v. Caraballo-Rodriquez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc)).

[7] *United States v. Burnett*, 773 F.3d 122, 135 (3d Cir. 2014) (quoting *Caraballo-Rodriquez*, 726 F.3d at 430).

[8] *Brodie*, 403 F.3d at 133 (quoting *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002)).

[9] Fed. R. Crim. P. 33.

discretion of the trial court.[10] On the motion of a defendant, a district court may "vacate any judgment and grant a new trial if the interest of justice so requires."[11] Rule 33 motions may be based on errors made during a trial. The Court may grant a new trial based on an error only if the error "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial."[12] "Harmless errors that do not deprive a defendant of a fair trial provide no basis for granting a defendant's Rule 33 motion."[13] The defendant bears the burden of proving a new trial should be granted, and must therefore show "(1) that error occurred at trial, and (2) that error had a substantial influence on the verdict."[14]

## II. DISCUSSION

Defendant argues that the government failed to present sufficient evidence to sustain the jury's verdict of guilty for Counts 1, 8, and 10. Defendant argues separate grounds for each count, and the Court will address those arguments in turn. In the alternative to Defendant's motion for acquittal on Count 1, he moves for a new trial on the basis of an incorrect jury instruction. Defendant's Motion for Judgment of Acquittal also states that he is moving for judgment of acquittal on Counts 6 and 7, but he offers no argument in support. As such, the motion for acquittal on Counts 6 and 7 will be denied.

---

[10] *United States v. Rottschaefer*, 178 F. App'x 145, 149 (3d Cir. 2006).

[11] Fed. R. Crim. P. 33(a).

[12] *United States v. Greenspan*, 923 F.3d 138, 154 (3d Cir. 2019) (quoting *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993)) (internal quotations and further citation omitted). *See also United States v. Fratus*, No. 20-270, 2021 WL 6125132, at *5 (E.D. Pa. Dec. 28, 2021); *United States v. Valentino*, No. 20-309, 2023 WL 361077, at *26 (E.D. Pa. Jan. 23, 2023).

[13] *United States v. Macinnes*, 23 F. Supp. 3d 536, 541 (E.D. Pa. 2014), *aff'd sub nom. United States v. Keszey*, 643 F. App'x 153 (3d Cir. 2016) (citing *Thornton*, 1 F.3d at 156).

[14] *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 720 (E.D. Pa. 2009), *aff'd,* 645 F.3d 564 (3d Cir. 2011).

### A.     Count 1 (Conspiracy to Commit Hobbs Act Robbery)

Count 1 of the Second Superseding Indictment, which charged conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), alleged the following:

> From at least in or around November 2019 through on or about January 3, 2020, in Philadelphia, Uwchlan Township, Havertown, in the Eastern District of Pennsylvania, and elsewhere, defendants
>
> **SHAQUAN BROWN,
> SAHIR McCORKLE, and
> TYREEK BYRD** . . .,
>
> conspired and agreed together, and with Person #1, a person known to the grand jury, and other known and unknown to the grand jury, to commit robbery, which robbery would unlawfully obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, in that defendants SHAQUAN BROWN, SAHIR McCORKLE, and TYREEK BYRD, and Person #1, and others known and unknown to the grand jury, conspired to unlawfully take and obtain money and other items of value from the person and in the presence of others and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property, all in violation of Title 18, United States Code, Section 1951(a), (b)(1), and (b)(3).[15]

The Second Superseding Indictment alleged that the four men planned to commit armed robberies targeting business owners and drug dealers, including the Happy Laundromat, D.W., Fiji Nails and Spa, A.H., and MGK Industries, LLC.[16]

####     1.     Motion for Acquittal

To find Defendant guilty on this count, the jury had to find, beyond a reasonable doubt, that (1) two or more persons agreed to commit robbery which interferes with interstate commerce; (2) Defendant was a party to or member of the agreement; and (3) Defendant joined the agreement or conspiracy knowing of its objective to commit robbery which interferes with

---

[15] Second Superseding Indictment ¶ 7 [Doc. No. 82].

[16] *Id.* ¶¶ 1, 3, 4, 5, 6, 8 [Doc. No. 82].

interstate commerce and intending to join together with at least one other alleged conspirator to achieve that objective.[17]

Defendant argues there is insufficient evidence to show that Defendant conspired with other coconspirators named in the indictment regarding the Uwchlan Township property robbery of A.H.[18] Arguing that "there was no evidence at trial that Defendant Brown, Sahir McCorckle [sic], and Tyreek Byrd conspired to commit Hobbs Act robbery of the Uwchlan Township property,"[19] Defendant claims there was insufficient evidence to convict him of the conspiracy charge as laid out in the indictment.

The indictment charged not just conspiracy to commit the Uwchlan Township robbery; it charged conspiracy to commit the string of robberies, including the Happy Laundromat, D.W., Fiji Nails and Spa, A.H., and MGK Industries, LLC.[20] Defendant has cited no case law supporting the claim that he is entitled to a judgment of acquittal if there is insufficient evidence to support a conviction of conspiracy to rob A.H. In fact, he cited no case law in support of his motion for acquittal on this claim at all. The government presented ample evidence to sustain a conviction that Defendant conspired with Tyreek Byrd and Sahir McCorkle to commit the robberies, regardless of specific evidence of conspiracy between those three men to commit the robbery of A.H.

The government presented testimony from McCorkle that he committed robberies and home invasions with Defendant, Tyreek Byrd, and a third person.[21] He testified that Defendant

---

[17] Third Circuit Model Jury Instruction, No. 6.18.371A; *see also United States v. Salahuddin*, 765 F.3d 329, 340 (3d Cir. 2014).

[18] Def.'s Mot. Acquittal at 3 [Doc. No. 330-1].

[19] *Id.*

[20] Second Superseding Indictment ¶¶ 1, 3, 4, 5, 6, 8 [Doc. No. 82].

[21] Trial Tr. 4/10/25 at 23-26 [Doc. No. 323].

was the leader of this group committing the robberies and he would direct the others who to target, where to meet, and what to bring via text messages.[22] McCorkle described Defendant notifying him of several robberies, and the government presented text messages between McCorkle and Defendant regarding the Happy Laundromat robbery and robbery of D.W.[23]

The government specifically presented evidence of the conspiracy to rob Fiji Nails and Spa Salon. There was evidence of phone calls on December 31, 2019—the day of the robbery—about 45 to 20 minutes before the robbery between Defendant and McCorkle and between Defendant and Byrd.[24] McCorkle testified that that the group planned and did meet in Overbrook Park in West Philadelphia prior to the Fiji Nails robbery.[25] He testified that Defendant told him he had tracked the victim's location to plan the robbery.[26] McCorkle testified he drove to Fiji Nails with Defendant and Byrd and waited for the victim to arrive.[27] There were also videos presented of the three men walking toward Fiji Nails and of three men exiting Fiji Nails together after the robbery. There was evidence that Defendant's cell phone was in the area of Fiji Nails during the robbery. Upon Defendant's eventual arrest, police seized a black Nike hoodie and a North Face backpack from him, which were later presented at trial. A gun was retrieved from the backpack. Defendant is seen wearing the hoodie and backpack in the video from outside Fiji Nails. McCorkle testified that after the Fiji Nails robbery, the three men split the proceeds of the

---

[22] Trial Tr. 4/10/25 at 35-40 [Doc. No. 323].

[23] Trial Tr. 4/10/24 at 37-38, 42-46, 60-64, 69-71 [Doc. No. 323]; Gov't Exs. 503, 504. Texts between Defendant and McCorkle about the Happy Laundromat robbery said "It's still a go this morning?", which McCorkle testified that he meant he was asking "[i]f we still going to rob someone this morning." Trial Tr. 4/10/24 at 44.

[24] Trial Tr. 4/11/24 at 175 [Doc. No. 324]; Gov't Ex. 920.

[25] Trial Tr. 4/10/24 at 69-71 [Doc. No. 323].

[26] *Id*. at 72-74 [Doc. No. 323].

[27] *Id*. at 69-76.

robbery.[28] There is also a video after Defendant's eventual arrest in the back seat of the police car, in which Defendant is seen trying to hide a mask. This evidence, viewed in the light most favorable to the prosecution, is more than sufficient to sustain a conviction of conspiracy between Defendant, McCorkle, and Byrd. Given this wealth of evidence, the government presented sufficient evidence to sustain a conviction for conspiracy between Defendant, Byrd, and McCorkle.

Not only is the conspiracy conviction sustained by evidence regarding the Fiji Nails robbery, D.W. robbery, and McCorkle's testimony about the "group" who would commit robberies, but there is also ample evidence that Defendant conspired with Singletary—Person #1—to attempt the Uwchlan Township robbery. The government presented nine recorded phone calls between Defendant and Willie Singletary, during which the pair discussed plans for committing the Uwchlan Township property robbery. This evidence included discussion of placing a tracker on A.H.'s car, being "grimy" during the home invasion to locate money A.H. had from his property rental business, and in-detail discussion of how and when to commit the robbery of A.H.[29] While Defendant is correct that the indictment did not explicitly name Willie Singletary as part of the charged conspiracy, the indictment named "Shaquan Brown, Sahir McCorkle, and Tyreek Byrd, *and Person #1*."[30] From its opening statement, the government made clear that Person #1 was Willie Singletary.[31]

Review of a motion for judgment of acquittal requires this court to view the evidence in the light most favorable to the prosecution, and all of the government's evidence is viewed in

---

[28] Trial Tr. 4/10/24 at 92-93 [Doc. No. 323].

[29] *See* Trial Tr. 4/8/24 at 55-56 [Doc. No. 321]; Gov't Exs. 908, 909, 910, 911, 912.

[30] Second Superseding Indictment ¶ 7 [Doc. No. 82] (emphasis added).

[31] Trial Tr. 4/8/24 at 40 [Doc. No. 321].

7

conjunction with and as a whole. All reasonable inferences are drawn in favor of the jury's verdict of conviction. Viewed in the light most favorable to the prosecution and making inferences in favor of the jury's verdict, there was sufficient evidence presented such that the jury could infer that Person #1 was Willie Singletary and that Defendant conspired with Singletary to attempt the Uwchlan robbery. Accordingly, the Court finds sufficient evidence to support the jury's finding beyond a reasonable doubt that Defendant is guilty of conspiracy.

2. Motion for a New Trial

In the alternative to his motion for acquittal, Defendant moves for a new trial on Count 1 based on improper and inaccurate jury instructions. In the Third Circuit, an overt act is not an element of conspiracy to commit Hobbs Act robbery.[32]

Both the government and Defendant presented proposed jury instructions including an overt act element of conspiracy to commit Hobbs Act robbery, and after repeated charge conferences on the record, neither party posed objection nor amendment. The Court then issued a jury charge instructing that there are four elements of conspiracy to commit Hobbs Act robbery, including a requirement that "at some point during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement."[33] This Court explained the term "overt act" and instructed "the government does not have to prove that Mr. Brown personally committed any of the overt acts."[34] This instruction did not align with Third Circuit law on conspiracy to commit Hobbs Act robbery. Neither party objected to the misstated elements at trial.

---

[32] *See United Sates v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001); *United States v. Salahuddin*, 765 F.3d 329, 338 (3d Cir. 2014).

[33] Trial Tr. 4/12/2024 at 131 [Doc. No. 325].

[34] *Id.* at 136.

Before the jury was sent out for deliberations, the Court asked counsel if there were any further questions or if counsel requested a side-bar conversation before deliberations began, which was held regarding the government's request to provide the jury a list of proposed overt acts.[35] The Court declined to revise the charge to the jury, and the jury began deliberations. The government, Defendant, and the Court then addressed on the record the government's request to give the jury a list of overt acts.[36] The Court again declined to send to the jury either the Second Superseding Indictment or a proposed list of overt acts.[37] At no point in the extended conversation about overt acts did Defendant, or the government, object to the incorrect jury instruction, which both included in their proposed jury instructions.[38]

Defendant has waived this claim. It is puzzling to this Court why any party requested the overt act jury instructions and then failed to object to its issuance. It is obviously incorrect and should be reviewed for plain error.[39] In reviewing for plain error, the Court evaluates whether there is "(1) an error; (2) that is plain; and (3) that affected substantial rights."[40] The Court cannot grant relief unless "the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings."[41]

This error was plain, but it is de minimis and does not affect substantial rights. To receive a new trial under Rule 33, Defendant must show "(1) that error occurred at trial, and (2) that

---

[35] *Id*. at 168-69.

[36] *Id*. at 171-79, 184-86.

[37] *Id*.

[38] *Id*.

[39] *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004). Had Defendant objected to the instruction, it would be subject to a harmless error review. *Neder v. United States*, 527 U.S. 1, 7-15 (1999).

[40] *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005).

[41] *Id*. (quoting *Haywood*, 363 F.3d at 236).

error had a substantial influence on the verdict."[42] "A district court can order a new trial on the ground that a miscarriage of justice has occurred—that is, that an innocent person has been convicted."[43] This error clearly did not have a substantial influence on the verdict, nor did it affect the fairness, integrity, or public reputation of the judicial proceedings. Given the wealth of evidence against Defendant, there is no risk that a miscarriage of justice has occurred such that an innocent person has been convicted.

Neither can the Defendant demonstrate prejudice. A defendant is not prejudiced by an erroneous jury instruction if "it is highly probable that the error did not contribute to the judgment."[44] This "requires a record-intensive factual inquiry," in which the Court examines the record "to figure out why the jury convicted and whether different instructions would have changed its mind."[45]

Here, the error added an element to the conspiracy charge, creating an additional requirement for the jury to convict Defendant of conspiracy to commit Hobbs Act robbery. Omitting a necessary element of the crime ordinarily constitutes prejudicial error because due process requires a jury find proof beyond a reasonable doubt of every fact necessary to constitute the charged crime.[46] Yet, adding an unnecessary element did not prejudice Defendant.[47] In order to convict Defendant of Count 1, the jury necessarily found that all four charged elements were satisfied beyond a reasonable doubt. With the correct instruction, the jury would have to find the

---

[42] *Amirnazmi*, 648 F. Supp. 2d at 720, *aff'd,* 645 F.3d 564 (3d Cir. 2011).

[43] *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

[44] *United States v. Hughes*, 117 F.4th 104, 108 (3d Cir. 2024) (quoting *United States v. Greenspan*, 923 F.3d 138, 149 (3d Cir. 2019)).

[45] *Id*.

[46] *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004).

[47] *United States v. Johnson*, 462 F.2d 423, 427 (3d Cir. 1972).

first three elements beyond a reasonable doubt, which it did find. The instructional error made it factually more difficult to convict Defendant of Count 1, so the error did not have a substantial influence on the verdict.

Defendant claims he was prejudiced because the Court instructed that the jury did not need to find that Defendant personally committed any of the overt acts. He alleges that this instruction allowed the jury to convict him without finding that he committed an overt act. However, this is not prejudice. An accurate statement of the law of conspiracy to commit Hobbs Act robbery does not require a finding of an overt act.

The record contains ample evidence, detailed above,[48] that Defendant is guilty of conspiracy to commit Hobbs Act robbery. Accordingly, "in light of the evidence presented at trial," the erroneous jury instruction could have had no "prejudicial impact on the jury's deliberations, so that it produced a miscarriage of justice."[49] Because Defendant waived the issue and the erroneous jury instruction did not have a substantial influence on the verdict, the motion for a new trial will be denied.

### B.    Count 8 (Attempted Hobbs Act Robbery)

Defendant next argues that there is insufficient evidence to sustain the conviction on Count 8, which charged attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). To find Defendant guilty on Count 8, the jury had to find, beyond a reasonable doubt, that (1) Defendant intended to commit the crime of Hobbs Act robbery, and (2) Defendant performed an act constituting a substantial step towards the commission of Hobbs Act robbery, which strongly

---

[48] *See supra* Count 1 Motion for Acquittal.

[49] *Haywood*, 363 F.3d at 207 (quoting *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir. 1993)) (citations and internal quotations omitted).

corroborates or confirms that Defendant intended to commit the crime.[50] Therefore, the jury needed to find that Defendant intended to commit the three elements of Hobbs Act robbery: that (1) Defendant took from a victim alleged in the indictment property alleged in the indictment; (2) Defendant did so knowingly and willfully by robbery; and (3) as a result of Defendant's actions, interstate commerce was obstructed, delayed, or affected.[51]

      Defendant alleges that the government presented insufficient evidence that the attempted robbery of the Uwchlan Township property constituted an attempt to affect interstate commerce.[52] The government presented testimony from A.H. regarding his rental property business, specifically that A.H. owned ten properties in Philadelphia, including some commercial properties like a tax business and a hair salon.[53] A.H. also testified that that he collected rent via apps like CashApp, Zelle, or ApplePay, which function using the internet.[54] Defendant argues there was insufficient evidence to sustain the attempt conviction because the government did not produce evidence that Defendant attempted to procure the physical proceeds transferred via internet application.[55]

      However, as the government identifies, the Third Circuit has established "a rather low hurdle for the Government in Hobbs Act cases" with respect to the interstate commerce element.[56] Here, as in *United States v. Powell*, the government presented evidence that Defendant and his co-conspirators intentionally targeted business owners, and such a targeting

---

[50] Trial Tr. 4/12/24 at 144 [Doc. No. 325].

[51] *Id.* at 138-39.

[52] Def.'s Mot. Acquittal at 8 [Doc. No. 330-1].

[53] Trial Tr. 4/8/24 at 196-97 [Doc. No. 322].

[54] *Id.* at 197.

[55] Def.'s Mot. Acquittal at 10 [Doc. No. 330-1].

[56] *United States v. Shavers*, 693 F.3d 363, 372 (3d Cir. 2012).

theory is sufficient to meet the Third Circuit's requirements for showing an effect on interstate commerce.[57] In recorded telephone calls between Defendant and Singletary, Singletary encouraged Defendant to rob A.H. because there was "half a million" dollars in the house for him to steal.[58] Singletary told Defendant A.H. "got 20 stores," and later reiterated that A.H. had "like 20 jawns, like my folks could tell you what type of stores they is."[59] Singletary also emphasized the timing of the robbery on January 2 because "[o]n the first he there all day. Because this is his . . . big money makers. . . Today is when he collect all his money, his rent. . . ."[60] Viewed in the light most favorable to the prosecution, this evidence is sufficient that a reasonable jury could find, beyond a reasonable doubt, that A.H. was targeted because of his rental property business, so the attempted robbery was a robbery that would affect interstate commerce.

Further, the Third Circuit has established that "the depletion of assets" theory is sufficient to establish the effect on interstate commerce where "a Hobbs Act robbery depletes the assets of a business engaged in interstate commerce."[61] Defendant argues the government did not present sufficient evidence to establish that the money at the Uwchlan Township property was related to the money A.H. received from commercial properties in rent. But the government did present sufficient evidence that A.H. was targeted as a business owner and Defendant intended to procure A.H.'s business assets, which would deplete A.H.'s assets sufficient to establish the effect on interstate commerce. Accordingly, the Court finds sufficient evidence to support the

---

[57] *United States v. Powell*, 693 F.3d 398, 405 (3d Cir. 2012).

[58] Gov't Ex. 909.

[59] Gov't Exs. 909, 911.

[60] Gov't Ex. 912.

[61] *United States v. Urban*, 404 F.3d 754, 762 (3d Cir. 2005).

jury's finding beyond a reasonable doubt that Defendant is guilty of attempted Hobbs Act robbery.

### C.     Count 10 (Felon in Possession of a Firearm)

Finally, Defendant argues that the government presented insufficient evidence to sustain a conviction on Count 10, which charged Defendant with possessing a firearm as a felon. To sustain a conviction on this charge under 18 U.S.C. § 922(g), the government must prove that (1) Defendant was a convicted felon; (2) Defendant knowingly possessed a firearm; (3) Defendant knew he had previously been convicted of a felony; and (4) the possession was in or affected interstate or foreign commerce.[62] Defendant argues that the government did not present sufficient evidence to establish that Defendant's possession of the firearm was in or affected interstate or foreign commerce.[63]

The government presented testimony that the firearm at issue was a Smith & Wesson, .40 caliber semi-automatic pistol, and it was manufactured in Springfield, Massachusetts.[64] Evidence was also presented that the gun was recovered in Pennsylvania.[65] The government's interstate nexus of firearms expert was asked, "[D]id you have an opinion about whether this gun being manufactured in Massachusetts and recovered in Pennsylvania traveled in interstate commerce?"[66] The expert responded "Yes."[67] Later, the expert testified that "[his] opinion is that this firearm was manufactured in Massachusetts and was found in Pennsylvania, so, therefore, it

---

[62] Model Criminal Jury Instructions, No. 6.18.922G (2018); *United States v. Adams*, 36 F.4th 137, 144 (3d Cir. 2022).

[63] Def.'s Mot. Acquittal at 11-14 [Doc. No. 330-1].

[64] Trial Tr. 4/11/24 at 10-11 [Doc. No. 324].

[65] *Id.* at 12.

[66] *Id.* at 11.

[67] *Id.*

14

affected interstate commerce."[68] Defendant argues this testimony failed to establish travel in interstate commerce and focused solely on a legal conclusion of whether the gun "affected" interstate commerce.

The government also presented testimony from the expert that his work involves examining firearms, determining where they are manufactured, and determining how it affected interstate commerce.[69] The expert testified that "if a firearm is made in one state and crosses a line into another, it's found in another state, it affects commerce."[70] On cross-examination, the expert reiterated his opinion that "the gun being manufactured in Springfield, Massachusetts traveled in interstate commerce."[71] The expert repeatedly opined that the gun was manufactured in Massachusetts and was found in Pennsylvania.

The Third Circuit has held that the government need only "prove that the firearm possessed by the convicted felon traveled at some time in interstate commerce" to sustain a conviction under § 922(g).[72] Viewed in the light most favorable to the prosecution and making all inferences in favor of the jury's decision to convict, the evidence is sufficient to show that the gun was manufactured in Massachusetts, recovered in Pennsylvania, and therefore, traveled in interstate commerce. Because there is sufficient evidence to establish the gun traveled in interstate commerce, there is sufficient evidence to establish the interstate commerce element of § 922(g). Accordingly, the Court finds sufficient evidence to support the jury's finding beyond a

---

[68] *Id.* at 12.

[69] *Id.* at 5.

[70] *Id.*

[71] *Id.* at 13.

[72] *United States v. Singletary*, 268 F.3d 196, 200 (3d Cir. 2001) (quoting *Scarborough v. United States*, 431 U.S. 563, 568 (1977)) (internal quotations omitted).

reasonable doubt that Defendant is guilty of felon in possession of a firearm in violation of § 922(g).

### III.  CONCLUSION

Upon careful consideration of all of the arguments raised by Defendant, and for the reasons stated above, the Court is satisfied that Defendant received a fair trial and that the evidence was sufficient to sustain the convictions beyond a reasonable doubt. The motion for judgment of acquittal and/or a new trial will be denied. An order will be entered.